IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MIKE THOMPSON**, *member of the Kansas Senate, in his official capacity,* **and** **Michael Murphy**, *member of the Kansas House of Representatives, in his official capacity,* | ) ) ) ) ) ) ) | |
| **Plaintiffs**, | ) ) | |
| **v.** | ) | **Case No. 23-cv-4120-TC-GEB** |
| **TY MASTERSON**, *President of the Kansas Senate, in his official capacity,* **and** **DANIEL HAWKINS,** *Speaker of the Kansas House of Representatives, in his official capacity,* | ) ) ) ) ) ) ) | |
| **Defendants**, | ) ) | |
| **and** | ) ) | |
| **ETHAN CORSON, DINAH SYKES, MARCI FRANCISCO, TOM HOLLAND, PAT PETTEY, CINDY HOLSCHER, and MARY WARE**, *members of the Kansas Senate, in their official capacities,* **and** **JERRY STOGSDILL, JOHN CARMICHAEL, and DAN OSMEN**, *members of the Kansas House of Representatives, in their official capacities,* | ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Proposed Intervenor Defendants**. | ) | |

**MEMORANDUM AND ORDER DENYING MOTION TO INTERVENE AND SETTING PHASE I SCHEDULING ORDER**

On July 24, 2024, the Court convened an in-person motion hearing to address the

Proposed Intervenor Defendants' Motion to Intervene (**ECF No. 10**). Plaintiffs appeared through counsel, Edward D. Greim and Katie Graves.  Defendants appeared through counsel, Abhishek Kambli and James Rodriguez. The Proposed Intervenor Defendants appeared through counsel, Mark P. Johnson.

After careful review of the briefs (ECF Nos. 10, 11, 17, 20 and 23) and all attached exhibits, and consideration of the arguments presented at the hearing, the Court finds the Proposed Intervenor Defendants, at this stage of the litigation, have not established Defendants will inadequately protect their interests in this action.  Thus, the Court **DENIES** the Motion to Intervene **WITHOUT PREJUDICE**. If, however, future developments undermine the presumption of adequate representation, the Proposed Intervenor Defendants may renew their request to intervene.  The Court's decision is explained more fully below.

## I. Background[1]

On December 22, 2023, Plaintiffs Mike Thompson, as a member of the Kansas Senate in his official capacity, and Michael Murphy, as a member of the Kansas House of Representatives, in his official capacity, filed a Complaint against Ty Masterson as President of the Kansas Senate, in his official capacity, and Daniel Hawkins as Speaker of the Kansas House of Representatives, in his official capacity.  According to the Complaint, on March 22, 2023, a simple majority in the Kansas House of Representatives voted to pass

---

[1] Unless otherwise indicated, the information set forth in this section is taken from Plaintiffs' Complaint (ECF No. 1) and Defendants' Answer (ECF No. 6). This background information should not be construed as judicial findings or factual determinations.

House Concurrent Resolution 5008, and a simple majority in the Kansas Senate voted to pass Senate Concurrent Resolution 1607.  These Resolutions, which both Plaintiffs voted for, each make application to the U.S. Congress to call a convention of the States for the purpose of proposing amendments to the U.S. Constitution that would impose limits on the federal government.

Despite the Resolutions receiving a simple affirmative majority vote, the Defendants, in their roles as President of the Kansas Senate and Speaker of the Kansas House of Representatives, ruled the Resolutions did not pass their respective chambers for failure to receive a super-majority of affirmative votes as required by Article 2 Section 13 of the Kansas Constitution.   As relevant here, Article 2 Section 13 of the Kansas Constitution states "[t]wo-thirds (2/3) of the members then elected (or appointed) and qualified in each house, voting in the affirmative, shall be necessary to ratify any amendment to the Constitution of the United States or to make any application for congress to call a convention for proposing amendments to the Constitution of the United States."

Plaintiffs state Defendants did not rely on any rule or provision of law other than Article 2 Section 13 of the Kansas Constitution in rejecting passage of the Resolutions. Plaintiffs, however, allege this provision of the Kansas Constitution violates Article V of the U.S. Constitution, which they argue sets forth the exclusive procedures for Congress and state legislatures to amend the U.S. Constitution.  Plaintiffs then assert that if the Kansas Constitution did not require a super-majority affirmative vote, the Defendants, in their presiding roles, would have issued a decision the Resolutions passed both Chambers on March 22, 2023.

Therefore, based on the above assertions, Plaintiffs' Complaint seeks "declaratory judgments that Article 2 Section 13 of the Kansas Constitution is unconstitutional and therefore cannot be a basis for denying passage of House Concurrent Resolution (HCR) 5008 and Senate Concurrent Resolution (SCR) 1607 by their respective Chambers, and that accordingly, these concurrent resolutions have been passed by their respective Chambers by majority votes and therefore have been adopted by each Chamber."

On January 24, 2024, Defendants filed an Answer.  They are being represented by the office of the Kansas Attorney General, Kris Kobach.  In the Answer, Defendants admit the only reason they ruled the Resolutions did not pass was due to the above-mentioned provision of the Kansas Constitution requiring a two-thirds affirmative majority vote.  However, Defendants deny this provision is unconstitutional and deny the Resolutions should be passed based on the alleged unconstitutionality.  Defendants list the following affirmative defenses: (1) Plaintiffs' Complaint fails to state a claim upon which relief can be granted; (2) the Court lacks subject-matter jurisdiction because Plaintiffs' claims are nonjusticiable political questions; and (3) any other additional defenses that may become apparent.

On January 26, 2024, the Court entered an Initial Order Regarding Planning and Scheduling ("Initial Order") setting forth certain deadlines in preparation for a March 8, 2024 scheduling conference.[2]  On that same day, Plaintiffs and Defendants filed a Joint Motion to Close the Pleadings and Stay Discovery in Lieu of Judgment on the Pleadings

---

[2] ECF No. 7.

("Joint Motion").[3]  In the Joint Motion, the parties requested, in the interest of judicial economy and efficiency, the pleadings be closed and discovery stayed so the Court could decide the case on the parties' respective motions for judgment on the pleadings in accordance with Fed. R. Civ. P. 12(c).[4] The parties agreed the case involves purely legal questions and no dispute exists over any material fact.[5]  The parties further stated they would file their Rule 12(c) motions by February 20, 2024.[6]  The Court, however, was hesitant to grant the Joint Motion before the parties' Rule 12(c) motions were on file. Therefore, the Court deferred ruling on the Joint Motion and stated the deadlines in the Initial Order would stay in place for the time being.[7]

On February 9, 2024, the Proposed Intervenor Defendants (referred to hereinafter as "Intervenors") filed a Motion to Intervene as Defendants, along with a Proposed Answer.[8] Intervenors are members of the Kansas Senate and Kansas House of Representatives who voted against the Resolutions.[9]  They argue intervention is necessary because Defendants will not adequately represent their interests in this matter.[10]  The crux of Intervenors' argument is the Defendants, like Plaintiffs, voted in favor of the Resolutions, and also "coordinated" with Plaintiffs to gain "lightning-quick" resolution in this case by filing the Joint Motion.[11]

---

[3] ECF No. 8.
[4] *Id*. at p. 2.
[5] *Id*.
[6] *Id*.
[7] ECF No. 9.
[8] ECF Nos. 10 and 10-1.
[9] ECF No. 11 at pp. 5-6.
[10] *Id*. at p. 5.
[11] *Id*.

On February 9, 2024, the Court stayed all deadlines pending resolution of the Motion to Intervene and mooted the Joint Motion.[12]  The Court stated a schedule, including the setting of any Rule 12(c) motions as deemed necessary, would be set after a ruling on the Motion to Intervene.[13]  On June 13, 2024, the Plaintiffs filed a Motion for a Status Conference.[14]  Upon review, the Court determined an in-person hearing would aid in its resolution of the Motion to Intervene.[15]  Accordingly, on July 24, 2024, the Court heard oral arguments from Plaintiffs, Defendants, and Intervenors and took the matter under advisement in order to issue this written ruling.[16]

## II.  Motion to Intervene as Defendants (ECF No. 10)

Intervenors seek to intervene as defendants as a matter of right under Fed. R. Civ. P. 24(a)(2), or in the alternative, by permissive intervention under Fed. R. Civ. P.  24(b). [17] Each is discussed below.

### A.  Intervention of Right Under Fed. R. Civ. P. 24(a)(2)

Pursuant to Rule 24(a)(2), the Court must permit intervention as a matter of right if four requirements are met: (1) the motion is timely; (2) the movant claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately

---

[12] ECF No. 12.
[13] *Id.*
[14] ECF No. 24.
[15] ECF No. 26.
[16] *See* ECF No. 27.
[17] ECF No. 10 at p. 2.

represented by existing parties.[18]  The Tenth Circuit takes a liberal approach to intervention and relaxes intervention requirements in cases raising significant public interests.[19]

Here, there is no dispute regarding Intervenors meeting the first three requirements.[20]  Therefore, only the fourth requirement, whether the Intervenors' interest will be adequately represented by Defendants, will be analyzed.

### 1.  Legal Standard Regarding Inadequate Representation

Generally, the proposed intervenor's burden to show inadequate representation is minimal.[21]  The "possibility of divergence of interest need not be great in order to satisfy" this burden and it is sufficient to show the representation "may be" inadequate.[22]

However, when the proposed intervenor's and representative party's interests are "identical," adequate representation is presumed.[23]  But "this presumption applies only when interests overlap fully."[24]  Having a "similar," but not "identical" interest is normally not enough to "trigger a presumption of adequate representation."[25]  In making this determination, the Court should not "equate relief and interests."[26]  Thus, the pertinent

---

[18] *Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1030 (10th Cir. 2024) ("*Kane IV*").
[19] *Id.* at 1033-34.
[20] *See* ECF No. 17 at pp. 1-3 and ECF No. 20 at p. 2.
[21] *Kane IV*, 94 F.4th at 1030.
[22] *Id.* (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) and *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978)).
[23] *Id.* (citing *Bottoms v. Dresser Indus., Inc.,* 797 F.2d 869, 872 (10th Cir. 1986)).
[24] *Id.* (quoting *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 196-97, 142 S. Ct. 2191, 213 L. Ed. 2d 517 (2022)).
[25] *Id.*
[26] *Id.* at 1032.

inquiry is not whether the proposed intervenor and representative party are pursuing the same relief, but instead is whether they have identical interests in pursuing that relief.[27]

Additionally, if a case presents only a single issue on which the government's position is quite clear and no evidence suggests that position might be subject to change in the future, and the proposed intervenors do not claim unique knowledge or experience, then representation may be adequate.[28]

Finally, if the presumption of adequate representation does apply, it can be rebutted by a "concrete showing of circumstances" which would make the representation inadequate.[29]   Thus, the presumption may be overcome by showing there is collusion between the representative party and an opposing party, the representative party has an interest adverse to the proposed intervenor, or the representative party has failed to represent the proposed intervenor's interest.[30]

### 2.  Arguments Regarding Identical Interests

As stated above, adequate representation is presumed if Intervenors and Defendants have identical interests in pursuing the same relief.  Neither party disputes they are seeking the same relief.  Both want Article 2 Section 13 of the Kansas Constitution and the Kansas Legislature's rejection (by not reaching a super-majority affirmative vote) of the

---

[27] *Id.*

[28] *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017) (citing *Kane Cty., Utah v. United States*, 597 F.3d 1129, 1134–35 (10th Cir. 2010) ("*Kane I*")).

[29] *Bottoms*, 797 F.2d at 872; *see also Marie v. Moser*, No. 14-CV-02518-DDC/TJJ, 2014 WL 5800151, at *2 (D. Kan. Nov. 7, 2014) (stating a proposed intervenor may defeat the presumption of adequate representation only by making a "compelling showing" to the contrary).

[30] *Bottoms,* 797 F.2d at 872-73; *see also Wyoming Outfitters Ass'n v. Wyoming Game & Fish Comm'n*, 242 F.3d 392, n.2 (10th Cir. 1999).

Resolutions upheld. The parties do disagree, however, on whether their interests are identical such that adequate representation can be presumed.

Intervenors argue against applying the presumption of adequate representation. They assert their interest in pursuing the above-stated relief is not identical to Defendants because Defendants, like Plaintiffs, voted in favor of the Resolutions.  Intervenors claim their interest in the lawsuit is maintaining the effectiveness of their "no" votes on the Resolutions.  They state their votes, in combination with the other negative votes, kept the Resolutions from passing each legislative chamber because the Kansas Constitution's super-majority vote requirement was not met.

In other words, they want to ensure their "no" votes are not nullified by a finding of unconstitutionality and subsequent declaration the Resolutions actually passed each chamber by a simple affirmative majority vote, as Plaintiffs are seeking.  Intervenors argue Defendants cannot share this interest because they voted to pass the Resolutions. Intervenors claim if "the Defendants 'lose' this case, their votes to approve Kansas' call for a constitutional convention will actually be *validated*—not nullified like the Intervening Legislators' votes, a result that could well please the Defendants."[31]

Defendants, on the other hand, argue for the presumption of adequate representation. They assert the interests are identical because, by virtue of being sued in their capacities as Speaker of the House of Representatives and President of the Senate, Plaintiffs' action is actually against the Kansas Legislature at large.  And, the Legislature, as a whole, rejected

---

[31] ECF No. 11 at p. 13.

the Resolutions.  Therefore, Defendants claim the Intervenors' interest in ensuring their votes are not nullified is not any different than the Legislature's interest in ensuring its denial of the Resolutions is upheld.

Defendants further state that per K.S.A. § 75-702(a) and (b), they are represented by the Kansas Attorney General ("AG") in this matter.  Pursuant to this statute, when the constitutionality of a law is at issue, as it is here, Defendants argue the AG has a duty to appear and defend the matter, and to also control that defense.  The AG's office asserts they are "bound by duty and oath" to "vigorously" defend the Kansas Constitutional provision at issue and the rejection of the Resolutions, and they intend to do just that.[32]

### 3.  Presumption of Adequate Interest Applies

The Court agrees with Defendants the interests are identical and the presumption of adequate representation applies.  First, the Court notes Defendants were sued in their official capacities as leaders of the House of Representatives and Senate, rather than in their official capacities as individual members of those bodies.  While Defendants may have voted for the resolutions as individual members of the Legislature, they ruled in their leadership capacities (the capacities in which they were sued) the Resolutions did not pass each chamber because a super-majority of affirmative votes was not reached.

Additionally, the Court agrees with Defendants that suing them in their official leadership capacities is akin to suing the Legislature as a whole.  The Court is unsure who

---

[32] *See* ECF No. 20 at p. 9 ("The lawyers that the Attorney General has assigned to this case can and will represent the state's constitution in at least as vigorous and thorough manner as any proposed intervenor; they are bound by duty and oath to do so."); *see also* pp. 3, 4, 7, 8, 10, and 13.

else Plaintiffs would have sued as bringing an action against the State of Kansas or the Legislature would raise immunity issues.  When asked about this at the July 24th hearing, Intervenors, despite arguing otherwise in their reply brief,[33] acknowledged Defendants are the proper parties.

Next, the Court views the Intervenors' claimed interests in ensuring their "no" votes are not nullified and the Defendants' claimed interests in ensuring the Kansas Constitution and rejection of the Resolutions are upheld are the same thing, just stated differently.  If the Defendants' rulings the Resolutions did not pass because a super-majority vote was not reached are upheld (*i.e.*, the Kansas Constitutional provision is upheld), then Intervenors' votes are in no danger of being nullified.  More importantly, at the hearing, Defendants, *via* the AG's office, confirmed its interest in representing the Legislature in this matter is to ensure every lawful vote is upheld.[34]  The AG's counsel specifically stated they did not want anyone's vote nullified if the law says they should not be.  Moreover, the Court fails to see how the individual "yes" or "no" votes are even relevant to issue at hand other than to show the required two-thirds affirmative majority vote was not met.  When asked about this at the hearing, Intervenors' counsel agreed the individual votes are likely only relevant for the result reached.

---

[33] ECF No. 23 at p. 11 (stating Plaintiffs selected Defendants to sue because they are the officials most sympathetic to Plaintiffs' cause).

[34] *See also* ECF No. 20 at p. 13 (Defendants state their interests match Intervenors because both "ultimately want the same result in the case (which is the vote on each of House Concurrent Resolution No. 5008 and Senate Concurrent Resolution No. 1607 to be upheld) . . . .").

Furthermore, not only are the interests identical, but the AG's counsel, as officers of the Court, have vowed to robustly and completely defend the Kansas Constitution and the denial of the Resolutions.  They stated so several times in their response brief and during oral arguments.[35]  Counsel also reiterated they have a duty and oath to defend the Kansas Constitution.[36]  The Court, at least at this stage of the litigation, does not have any compelling evidence before it to suggest counsel will not fulfill their duty and uphold their oath in this matter as they have promised to do.[37]

Finally, case law instructs that in cases presenting a single issue on which the government's position is quite clear and no evidence suggests that position might be subject to change in the future, and the proposed intervenors do not claim unique knowledge or experience, then representation may be adequate.[38]  For example, in *Kane County, Utah v. United States* ("*Kane I*"), the Tenth Circuit found representation adequate where the only issue to be resolved was whether the plaintiff or defendant held title to the subject roads.[39]  This holding was affirmed by the Tenth Circuit in *Kane IV* where the Court explained binary issues, such as whether or not title exists, do not usually give rise to multiple

---

[35] *See* ECF No. 20 at pp. 3, 4, 7, 8, 9, 10, and 13.

[36] *Id.*; *see also Marie*, 2014 WL 5800151, at *3 (finding adequate representation and noting the "Kansas Attorney general is obligated by statute to defend Kansas laws when they are challenged as unconstitutional"); *see also* K.S.A. § 54-106.

[37] *Kane I*, 597 F.3d at 1135 (finding adequate representation where defendant thus far, on the record before the Court, displayed no reluctance to defend case); *Marie*, 2014 WL 580015, at *3 (finding adequate representation where "counsel from the Kansas Attorney General's Office have vigorously defended the challenged laws at the motion hearing, and have represented that they will continue to do so."); *see infra* Section II.A.4. for a discussion of the exhibits submitted by Intervenors.

[38] *W. Energy All.*, 877 F.3d at 1168.

[39] 597 F.3d 1129, 1134-35 (10th Cir. 2010).

objectives that can lead to proposed intervenors and representative parties having different interests while pursuing the same relief.[40]

And, *Marie v. Moser*, a case in this District, applied a presumption of adequate representation and denied intervention where the issue was the constitutionality of a Kansas law.[41]  Notably, the Court stated there was no "continuum of possible outcomes," along which the proposed intervenor's and AG's interest could diverge.[42]  Rather, there were "only two possible outcomes" of either the law continuing or being enjoined, and both parties sought the former.[43]

The instant case presents a similar yes or no question.  Either the District Judge will find Article 2 Section 13 of the Kansas Constitution to be constitutional under the U.S. Constitution or he will not.  Both Intervenors and Defendants seek for the provision to be upheld.  And to complete the test stated above, the AG's office has made its position quite clear they intend to defend the Kansas Constitution, and the Intervenors have not claimed any unique knowledge or experience in the matter making intervention necessary.[44]

### 4.  No Rebuttal of Presumption of Adequate Representation

As stated earlier, Intervenors may overcome the presumption of adequate representation with a compelling and concrete showing of (1) collusion between the

---

[40] *Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1028-1035 (10th Cir. 2024).
[41] No. 14-CV-02518-DDC/TJJ, 2014 WL 5800151 (D. Kan. Nov. 7, 2014).
[42] *Id.* at *3.
[43] *Id.*
[44] *See, e.g., Kane I*, 597 F.3d at 1135 (finding adequate representation where proposed intervenors presented no evidence of any special expertise, experience or knowledge not available to the representative party).

representative party and an opposing party, (2) the representative party failing to represent the proposed intervenor's interest, or (3) the representative party having an interest adverse to the proposed intervenor.

First, Intervenors argue there is evidence of collusion between Plaintiff and Defendants in their "coordinated attempt to gain lightning-quick resolution of this case in which the Plaintiffs seek preemption of the Kansas Constitution"[45] through the filing of the Joint Motion to close the pleadings, stay discovery, and file Rule 12(c) motions. Defendants and Plaintiffs state there is no collusion, but rather a view among counsel the case contains purely legal questions for which discovery is not needed. Defendants' counsel adds they are ethically required to proceed in a way that avoids expending judicial resources or incurring litigation expenses unnecessarily. At the hearing, Plaintiffs' counsel agreed the issues are purely legal and they are trying to proceed efficiently, but also reiterated Plaintiffs takes a very different stance on the constitutional issues than Defendants.

The Court agrees the issues here appear to be legal and finds nothing unusual regarding parties wanting to efficiently solve legal questions with Rule 12(c) motions. Thus, the Court finds no showing, let alone a concrete one, of collusion between Plaintiffs and Defendants in this regard.[46]

---

[45] ECF No. 11 at p. 5.
[46] *See, e.g., Kane I*, 597 F.3d at 1135 (finding representation adequate where proposed intervenors presented only speculative arguments about the representative party's litigation strategies).

Next, Intervenors argue Defendants have failed to represent their interests in this action.  Two of the Intervenors, Dinah Sykes as the Kansas Senate Minority Leader and Ethan Corson as a Kansas Senator, filed Declarations stating no one from the AG's office has reached out to them regarding defense of this matter.[47]  During the hearing, the AG's counsel responded that while they represent the Legislature at large, they have no duty to sit down with every member and discuss how they plan to defend the case, and noted Intervenors are represented by their own counsel, thus precluding direct contact.

The Court acknowledges pursuant to K.S.A. 75-702(a), the AG has a right to control the defense, and also has no obligation to sit down with every member of the Legislature. Thus, the Court finds, at least at this early stage of litigation, Intervenors have not made a concrete showing of failed representation.  However, as discussed during the hearing, the Court sees no reason why, now knowing the Intervenors' concerns, the AG cannot at least hear their thoughts on how the case should be defended.  The Court also stated nothing is stopping the Intervenors from reaching out to the AG, which has not appeared to have happened either.  The Court hopes the discussion during the hearing opens some space for communications, at least between Intervenors' counsel and the AG's counsel, going forward so Intervenors can trust the AG's office will truly vigorously defend this case as they have pledged to do.

Finally, Intervenors submit several exhibits showing Defendants and the AG support Kansas joining the call for a Constitutional Convention.  If passed, the Resolutions

---

[47] ECF No. 23-5 and ECF No. 23-6.

would allow Kansas to do so.   Intervenors argue this is evidence showing an interest adverse to theirs.  One exhibit is a 2021 newspaper article where Defendant Masterson, as Senate President, stated he hoped to pass a similar resolution to the ones at issue here by declaring the measure passed with a simple majority vote, thus sparking a lawsuit "to settle the question of what's required for Kansas to join the call."[48]   The Court understands Intervenors' point, however, this article is several years old and, in the present case, Defendant Masterson, as Senate President, denied passage of the Resolution at issue.[49]

The other exhibits are articles wherein the AG, Kris Kobach, expressed his support for a Constitutional Convention.[50]  Like the above exhibit, the Court does not find these articles compelling enough at this early stage of litigation to rebut the presumption of adequate representation.  First, these articles are older, with one dating back to 1994, and Mr. Kobach was not AG during these time periods.[51]  As stated in the previous section, the AG's counsel, as officers of the court, have repeatedly vowed to vigorously defend Article 2 Section 13 of the Kansas Constitution, which will result in the rejection of the Resolutions being upheld.[52]  Counsel has also made plain the AG has a duty and oath to defend the Kansas Constitution.[53]  Although early, the Court has not yet seen anything *in this litigation* to make it doubt the AG will robustly defend *this case.*

---

[48] ECF No. 23-1.

[49] *See, e.g., Kane I*, 597 F.3d at 1135 (finding past disagreements between a proposed intervenor and representative party did not equate to inadequate representation in the present litigation); *Marie*, 2014 WL 5800151, at *2 (same).

[50] ECF Nos. 23-2 and 23-3; 2018 article at https://conventionofstates.com/news/kansas-three-gubernatorial-candidates-endorse-convention-of-states (submitted at hearing).

[51] *See supra* n.49.

[52] *See supra* n.35.

[53] *See supra* n.36.

### 5. Conclusion Regarding Intervention as a Matter of Right

Based on the above, the Court concludes at this stage in the litigation, Defendants and Intervenors have an identical interest (upholding the rejection of the Resolutions) in pursing the same relief (upholding Article 2 Section 13 of the Kansas Constitution), such that the presumption of adequate representation applies.  Further, while understanding Intervenor's concerns regarding the Defendants' underlying votes in favor of the Resolutions and AG's previous statements supporting a Constitutional Convention, there is no compelling evidence at this point to overcome the presumption.[54]  Thus, the Court denies Intervenors' request to intervene as a matter of right without prejudice.  If, however, future developments undermine the presumption of adequate representation, the Intervenors may renew their request to intervene.[55]

One such development may occur if the District Judge finds Article 2 Section 13 of the Kansas Constitution to be unconstitutional. During the hearing, the Court asked Defendants if they would still advocate for the Resolutions to be rejected in that case by making an argument, for example, the unconstitutionality ruling should not apply retroactively.  Defense counsel stated it is too early to say what their position would be and would like to see the District Judge's reasoning before giving a definite answer.  Counsel further stated if the law provided a reasonable position to advocate for upholding the

---

[54] *See, e.g., Kane I*, 597 F.3d at 135 (denying intervention as matter of right where the proposed intervenor failed, at this stage of the ligation, to show inadequate representation).
[55] *See, e.g., San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1207 (10th Cir. 2007) (stating that if developments after a denial of intervention undermine the presumption of adequate representation, intervention maybe revisited).

rejection of the Resolutions, they would make those arguments.  However, the Court could see this being a circumstance, if it occurs, where Defendants' and Intervenors' interests could diverge, making representation inadequate and intervention necessary at that time.[56]

Plaintiff's counsel suggested the Court could bifurcate the proceedings to determine constitutionality in one phase and the effect of an unconstitutionality finding in another phase, if necessary.  Intervenors could be allowed to intervene in the second phase, if the Court finds it appropriate.  The Court agrees this approach makes sense.  The purely legal question of whether Article 2 Section 13 of the Kansas Constitution is constitutional can be decided in one phase, saving for a later phase, if needed, any issues that may arise from a declaration of unconstitutionality.  Thus, the Court enters a Phase I Scheduling Order in Section III. below consistent with this paragraph.

### B.  Permissive Intervention under Fed. R. Civ. P.  24(b)

In the alternative to intervention as a matter of right, Intervenors seek permissive intervention.  Under Rule 24(b)(1)(B) and (b)(3), such intervention is allowed when (1) the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact" and (2) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Permissive intervention is a matter within the Court's sound discretion.[57]

---

[56] *See, e.g., N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.,* 540 F. App'x 877, 881–82 (10th Cir. 2013) (noting there was no assurance of identical and aligned interests between intervenors and defendants on a remedy if an agency action was enjoined).
[57] *Arney v. Finney,* 967 F.2d 418, 421 (10th Cir. 1992).

While the Intervenors' Proposed Answer has defenses which share questions of law and fact in common with the Plaintiffs' Complaint, those defenses match the defenses listed in Defendants' Answer.[58] And, Defendants have stated they will fully argue those defenses. Intervenors also state vote nullification is a defense, but as discussed above, the Court finds Defendants share this interest. Furthermore, as acknowledged by Intervenors during the hearing, the underlying yes or no votes are likely not relevant to the ultimate question of whether Article 2 Section 13 of the Kansas Constitution is constitutional.[59]

Additionally, Intervenors could not identify any concrete discovery they would seek if allowed to intervene, thus leading the Court to agree the issues in this matter are largely legal.  In such cases, Intervenors may be allowed to present any non-duplicative arguments via an amicus brief, if they deem necessary.[60]  If Intervenors wish to do so, they should contact the District Judge's chambers regarding procedure.

For foregoing reasons, the Court, in its sound discretion, denies Intervenors' request for permissive intervention.

## III.  Phase I Scheduling Order

Pursuant to Section II.A.5. above, the Court sets a deadline of **October 11, 2024** for Plaintiffs and Defendants to submit Rule 12(c) motions regarding the constitutionality of

---

[58] Compare affirmative defenses listed at ECF No. 6 at p. 4 to ECF No. 10-1 at p. 9.

[59] *See, e.g., Kane I*, 597 F.3d at 136 (upholding denial of permissive intervention where proposed intervenors did not have any additional defenses to offer, defendant asserted its intent to fully defend claims, and resolution of the question in issue would not involve any claims or defenses in common with the proposed intervenor's interests).

[60] *Marie*, 2014 WL 5800151, at *4 (denying intervention and stating an "applicant for intervention by a party who wishes only to assert different arguments than the government can do so just as effectively by participating as an amicus curiae").

Article 2 Section 13 of the Kansas Constitution.  Responses shall be due by **November 8, 2024**.  Replies shall be due by **November 22, 2024**.

The Court believes this should allow sufficient time for Defendants to confer with Intervenors, as they deem appropriate, regarding what arguments to present.[61]  Intervenors are also reminded of their option to present non-duplicative arguments via an amicus brief, and should contact the District Judge's Chambers regarding procedure.

If the District Judge finds Article 2 Section 13 of the Kansas Constitution to be unconstitutional, the undersigned will set a status conference to discuss the next phase of litigation regarding the effect of such a finding on the passage of the Resolutions.

**IT IS THEREFORE ORDERED** the Motion to Intervene as Defendants **(ECF No. 10)** is **DENIED WITHOUT PREJDUICE**. If future developments undermine the presumption of adequate representation, the Proposed Intervenor Defendants may renew their request to intervene.  The parties shall follow the Phase I Scheduling Order set forth in Section III of this opinion.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 16th day of August 2024.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. MAGISTRATE JUDGE

---

[61] *See supra* discussion at Section II.A.4.